UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**CRIMINAL NO. 5:15-CR-40**
**(Judge Bailey)**

**RICHARD CERVI, JR.,**

Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation ("R & R") of United States Magistrate Judge James E. Seibert [Doc. 35]. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Seibert for submission of an R & R. An evidentiary hearing was held on July 20, 2015. Magistrate Judge Seibert issued his R & R on July 29, 2015. Therein, he recommends that this Court deny all four of the defendant's Motions to Suppress [Docs. 20-23]. After two brief extensions, the defendant timely filed his objections on September 8, 2015 [Doc. 40]. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court will review those portions of the R & R to which objections were made under a *de novo* standard of review. The remaining portions will be reviewed for clear error. After reviewing the Motions and Responses thereto, the R&R and defendant's Objections thereto, the transcript of the evidentiary hearing, and the video of the stop, for the reasons set forth below, this Court adopts the Report and Recommendation.

## I. BACKGROUND

On June 2, 2015, the defendant was named in a three count Indictment plus forfeiture allegations charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2); possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j), 924(a)(2); and possession with intent to distribute methamphetamine, in violation of 18 U.S.C. §§ 841(a), (b)(1)(C) [Doc. 1]. The defendant filed four separate motions to suppress: Motion to Suppress the Search of Vehicle for Lack of Consent [Doc. 20]; Motion to Suppress the Search of Mr. Cervi's Vehicle for Unreasonable Extension of the Traffic Stop [Doc. 21]; Motion to Suppress Search of Vehicle for an Illegal Traffic Stop [Doc. 22]; and Motion to Suppress Statements for Lack of *Miranda* Warnings [Doc. 23]. In these Motions, the defendant moves this Court to suppress all evidence seized and statements made during a February 11, 2015, traffic stop [Docs. 20-23]. The Government filed responses to the respective Motions [Docs. 25-28] on July 16, 2015.

The magistrate judge recommends denying all four motions to suppress because: (1) Corporal McFarland had probable cause to stop defendant Cervi's vehicle; (2) the facts reveal that defendant Cervi was not detained in a way analogous to arrest and Corporal McFarland's inquiry into whether defendant Cervi had drugs in the vehicle did not necessitate *Miranda* warnings; (3) Cpl. McFarland had reasonable suspicion to extend defendant Cervi's traffic stop; (4) the preponderance of the evidence supports defendant Cervi's valid and voluntary oral consent to search his vehicle; and (5) even if defendant did not consent to the search, the inevitable discovery rule would have nevertheless applied.

Defendant Cervi asserts four specific objections to the R&R as well as a general

2

objection to the overall conclusion of the magistrate judge to deny suppression. This Court will address each in turn.

## II. ANALYSIS

### A. Probable Cause to Stop Cervi's Vehicle

Defendant Cervi first objects to the R&R's conclusion that the stop was not supported by probable cause. This Court disagrees. Cpl. McFarland testified that he pulled defendant Cervi over after witnessing him pass another vehicle without using a turn signal, in violation of W.Va. Code § 17C-8-8(a). The defendant contends that he was pulled over for pretextual reasons, stating that "his vehicle had New Mexico license plates" and Cpl. McFarland "believed that this vehicle from out of state had to be involved in the drug trade." [Doc. 22 at 3].

Defendant's pretext argument is not supported by law, which likely explains why he fails to cite any in support of this argument. Rather, as the R&R correctly states, "[w]hen an officer observes a traffic offense – however minor – he has probable cause to stop the driver of the vehicle." *United States v. Hassen El*, 5 F.3d 726, 730 (4th Cir. 1993). Further, this holds true "regardless of the fact that the officer would not have made the stop but for some hunch or inarticulable suspicion of other criminal activity . . .." *Id.* Accordingly, Cpl. McFarland's observation of the illegal pass provided the requisite probable cause to make the initial stop. Arguments of counsel regarding pretext are inconsequential. This Objection is **OVERRULED**.

### B. Whether the Traffic Stop was Unreasonably Extended

Defendant Cervi's second objection asserts that the traffic stop was extended

3

beyond the permissible scope of a traffic stop. This Court disagrees. In support, the defendant cites to the recent United States Supreme Court decision in ***Rodriguez v. United States***, 135 S. Ct. 1609 (2015), for the proposition that "[a] seizure justified only by a police-observed traffic violation . . . 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* (quoting ***Illinois v. Caballes***, 543 U.S. 405, 407 (2005)).

The United States Court of Appeals for the Fourth Circuit has found that the time reasonably required for a routine traffic stop "cannot be stated with mathematical precision. Instead, the appropriate constitutional inquiry is whether the detention lasted longer than necessary, given its purpose." ***United States v. Branch***, 537 F.3d 328, 335 (4th Cir. 2008). As the Fourth Circuit noted: "Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." *Id.* at 335-36 (citations omitted). Thus, pursuant to such a stop, a police officer may "request a driver's license and vehicle registration, run a computer check, and issue a citation." ***United States v. Foreman***, 369 F.3d 776, 781 (4th Cir. 2004); *see also* ***Rodriguez***, 135 S. Ct. at 1615; ***Branch***, 537 F.3d at 335-36.

"[O]nce the driver has demonstrated that he is entitled to operate his vehicle, and the police officer has issued the requisite warning or ticket, the driver 'must be allowed to proceed on his way.'" ***Branch***, 537 F.3d at 336 (citing ***United States v. Rusher***, 966 F.2d 868, 876 (4th Cir. 1992)); *see also* ***Rodriguez***, 135 S. Ct. at 1615. This is the point at which the defendant would ask this Court to conduct half of the inquiry. At the initial stop,

Cervi was neither able to demonstrate his entitlement to operate the rental vehicle for failure to produce a valid driver's license, nor was he able to later demonstrate such entitlement as a check indicated that his license had been suspended. Cervi was certainly not allowed to "proceed on his way" with a suspended license; accordingly, Cpl. McFarland radioed in the tow truck.

The ultimate holding in *Rodriguez*, however, which the defendant ignores, is that the matter was remanded to answer "[t]he question whether reasonable suspicion of criminal activity justified detaining Rodriguez beyond completion of the traffic infraction investigation . . .." *Id.* at 1616-17. As noted in *Branch*, "if the driver obstructs the police officer's efforts in any way . . . a longer traffic stop would not be unreasonable." 537 F.3d at 336 (citation omitted). On the other hand, "[o]n-scene investigation into other crimes . . . [and] safety precautions taken in order to facilitate such detours are" not considered encompassed in the "mission" of the initial stop. *Rodriguez*, 135 S. Ct. at 1616. The Supreme Court has thus recognized that "[h]ighway and officer safety are interests different in kind from the Government's endeavor to detect crime in general or drug trafficking in particular." *Id.* (citing the difference between asking a defendant to exit a vehicle, as in *Pennsylvania v. Mimms*, 434 U.S. 1906 (1997), and prolonging a stop for a dog sniff). But the Supreme Court continues to carve out time to complete traffic-based inquiries. It is only unlawful when "a traffic stop [is] 'prolonged beyond' that point . . .." *Rodriguez*, 135 S. Ct. at 1616 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). The Court thus remanded the matter for the lower court to determine whether reasonable suspicion of criminal activity justified detaining Rodriguez beyond completion of the traffic infraction

investigation.

In that regard, the Court has held that "[t]he seizure remains lawful only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop.' *[Johnson]*, 555 U.S. at 333; see also ***Muehler v. Mena***, 544 U.S. 93, 101 (because unrelated inquiries did not 'exten[d] the time [petitioner] was detained[,] . . . no additional Fourth Amendment justification . . . was required'). An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop." ***Rodriguez***, 135 S. Ct. at 1615.

In his objection, the defendant asserts that "[a]ll the questioning that occurred was with the express purpose of investigating whether Mr. Cervi was engaged in criminal activity." [Doc. 40 at ¶ 9]. As the R&R articulates, this case is clearly distinguishable from the facts in ***Rodriguez***. Cervi was initially stopped for failing to use his turn signal, so Cpl. McFarland's "mission" was to check his license, "determin[e] whether there [were] outstanding warrants against [him], and inspect[] the automobile's registration and proof of insurance." ***Rodriguez***, 135 S. Ct. at 1615. Rodriguez was similarly pulled over for a traffic violation. That is where the similarities end.

In ***Rodriguez***, there was no finding of a "reasonable suspicion" of an additional crime which would permit that officer to bring a drug sniffing dog to the scene. In this case, Cpl. McFarland made several observations that suggested suspicious activity: Cervi handed him a Pennsylvania ID rather than a driver's license, he had a substantial amount of cash in his wallet, and the vehicle had an overwhelming odor of air fresheners. Additionally, while conducting a records check – a recognized inquiry included in an officer's "mission" – Cpl. McFarland discovered that Cervi was driving on a suspended

6

license and that he had a criminal record, including theft and drug delivery charges. These facts, as noted in the R&R, were all collected prior to the completion of the stop. Accordingly, reasonable suspicion of additional crimes existed such that Cpl. McFarland was permitted under **Rodriguez** to continue the stop.

In addition to a finding of reasonable suspicion, which standing alone was sufficient to continue the stop, the questioning unrelated to the traffic violation itself did not "measurably extend the duration of the stop." **Johnson**, 555 U.S. at 333. Cervi freely admitted within minutes that there might be a minimal amount of marijuana or methamphetamine inside his luggage. For all the above-stated reasons, the defendant's Objection is **OVERRULED**.

### C. Lack of *Miranda* Warnings

Defendant's third objection attacks the R&R's conclusion that the continued questioning of Cervi did not violate the holding of **Miranda v. Arizona**, 384 U.S. 436 (1966), and its progeny. This Court disagrees. In order to determine if a defendant was in custody for purposes of **Miranda**, the Court must look to the totality of the circumstances. **Berkemer v. McCarty**, 468 U.S. 420, 440 (1984). Motorists detained under an ordinary traffic stop are not in custody for the purposes of **Miranda**. See *id.*

The crux of such an examination is whether the "suspect's freedom of action is curtailed to a degree associated with formal arrest." **Berkemer**, 468 U.S. at 440. Additionally, "even a clear statement by an officer that the person being questioned is a suspect does not alone determine custody, but is only one among many factors that bear on the assessment of whether a reasonable person would feel free to depart." **United**

States v. Howard, 115 F.3d 1151, 1155 (4th Cir. 1997). Specifically, the Court looks to factors such as: whether defendant was handcuffed, whether the officer drew his weapon in defendant's presence, whether the officer told defendant that he was free to leave, and whether the conversations between the defendant and the officer were not threatening in tone. See *United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001) (finding that suspect who was questioned in the bedroom of her home was not in custody for purposes of *Miranda* where she was not forced to enter the room, she was not handcuffed or otherwise restrained, officers did not draw their weapons in her presence, and she was never told that she was *not* free to leave).

The argument made by defendant that he did not feel free to leave is not dispositive. "Custody determinations do not depend on the subjective views of either the interrogating law enforcement officers or the person being questioned, but depend instead [on] the objective circumstances of the interrogation." *Parker*, 262 F.3d at 419 (citing *Stansbury v. California*, 511 U.S. 318, 323 (1994)). "The relevant inquiry is how a reasonable man would have understood the suspect's position at the time." *Parker*, 262 F.3d at 419 (citing *Berkemer*, 468 U.S. at 419). Importantly, "an officer's views concerning the nature of an interrogation, or concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation . . . ." *Stansbury*, 511 U.S. at 325.

Given the testimony of Cpl. McFarland and defendant's own testimony, that defendant was not handcuffed at the time his statements were made; that the officer did

8

not draw his weapon; and that the conversation that took place between the defendant and the officer was amicable and non-threatening in tone, the Court finds that defendant was not detained to an extent analogous to an arrest at the time of his interview and, therefore, not subject to the protection of *Miranda* warnings. *See United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001). Defendant's objection is accordingly **OVERRULED**.

### D. Defendant's Consent to Search His Vehicle

Defendant Cervi's final objection asserts that he did not give valid consent for Cpl. McFarland to search his vehicle. This Court disagrees. In support, the defendant cites to *United States v. Robertson*, 736 F.3d 677, 680 (4th Cir. 2013), for the proposition that consent cannot be "begrudging submission to a command." Defendant's argument hinges on Cpl. McFarland's statement that he "has other tools at [his] disposal to use in order to get into that vehicle." Gov. Ex. 1. Defendant argues that Cervi reluctantly agreed to let Cpl. McFarland search the vehicle because he was submitting to "Trooper McFarland's command that he was going to search the car because he had other ways to search the vehicle regardless of Mr. Cervi's consent." [Doc. 40 at 6].

This Court must look at the totality of the circumstances to determine whether the defendant's consent was knowing and voluntary, which the Government must prove by a preponderance of the evidence. *See United States v. Mendenhall*, 446 U.S. 544, 557 (1980); *United States v. Buckner*, 473 F.3d 551, 553-55 (4th Cir. 2007). Factors "to consider include the characteristics of the accused (such as age, maturity, education, intelligence, and experience) and the conditions under which the consent to search was given (such as the officer's conduct, the number of officers present, and the duration of the

encounter)." ***United States v. Boone***, 245 F.3d 352, 361-62 (4th Cir. 2001) (citing ***United States v. Lattimore***, 87 F.3d 647, 650 (4th Cir. 1996)).

Looking to the above factors, we are faced with a thirty (30) year old man who claimed several times that he knew his rights. The stop occurred in broad daylight on a busy interstate. At the time consent was given, Cpl. McFarland was the only officer present. These factors weigh in favor of valid consent.

Further, "[w]hether the accused knew that he possessed a right to refuse consent also is relevant in determining the voluntariness of consent, although the Government need not demonstrate that the defendant knew of his right to refuse consent to prove that the consent was voluntary." ***Lattimore***, 87 F.3d at 650 (citing ***Schneckloth v. Bustamonte***, 412 U.S. 218, 219 (1973)). In this case, Cpl. McFarland told Cervi that he was "not causing problems" and that "[y]ou can say yes, you can say no." Cervi also fails to mention that Cpl. McFarland informed him prior to the search that Cervi could stop the search at any time. This leans in favor Cervi's voluntary consent.

Finally, the defendant does not object to the R&R's final finding that "even if Cervi did not provide voluntary consent, the inevitable discovery rule would nonetheless apply. Under this doctrine, illegally seized evidence may be admitted if the Government can prove 'by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.' ***Nix v. Williams***, 467 U.S. 431, 444 (1984)." [Doc. 35 at 16].

"An exception to the warrant requirement has long been recognized where probable cause is established to believe that a vehicle contains contraband or evidence of a crime."

10

*United States v. Lawing*, 703 F.3d 229, 239 (4th Cir. 2012). Cervi admitted "there might be" marijuana or speed in his vehicle. These statements provided probable cause that his vehicle contained illegal drugs.

For good measure, the R&R also notes that the vehicle would most likely have been searched pursuant to an inventory search after being impounded, which would have resulted in the ultimate discovery of the seized evidence. Because Cervi's license was suspended, it had to be towed to a nearby garage. Such inventory searches are routine and have been held reasonable and not in violation of a defendant's Fourth Amendment rights. See *South Dakota v. Opperman*, 428 U.S. 364 (1976); see also *United States v. Matthews*, 591 F.3d 230, 232 (4th Cir. 2009).

### III. CONCLUSION

For the foregoing reasons, this Court adopts the Report and Recommendation **[Doc. 35]**. The defendant's Objection **[Doc. 40]** is **OVERRULED** and the defendant's Motions to Suppress **[Docs. 20, 21, 22, & 23]** are **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: September 21, 2015.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

11